**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**STATE AUTOMOBILE PROPERTY AND
CASUALTY INSURANCE COMPANY,**

**Plaintiff,**

**v.**

**ROCKBRANCH IRONWORKS, INC., and
MORRISSEY CONSTRUCTION COMPANY,**

**Defendants.**                                                                 **No. 06-846-DRH**

## MEMORANDUM & ORDER

**HERNDON, Chief Judge:**

### I. Introduction

On November 2, 2006 Plaintiff State Automobile Property and Casualty Insurance Company ("Plaintiff") filed a complaint for declaratory judgment in this Court, based on diversity jurisdiction, against Defendants Rockbranch Ironworks, Inc. ("Rockbranch") and Morrissey Construction Company ("Morrissey"). (Doc. 2-1.) Currently, Rockbranch and Morrissey are involved in another lawsuit pending before the Circuit Court for the Third Judicial Circuit, in Madison County, Illinois. In this underlying action, ***Morrissey Construction Company v. Rockbranch Ironworks, Inc.*, Cause No. 05BA-CV04871**, Morrissey alleges in Count I that Rockbranch entered into a subcontract with Morrissey to provide structural steel work at Mid America Airport Air Cargo Facility ("the project") and that subsequently Rockbranch violated its subcontract by failing to use qualified welders and to complete the

1

project. In Count II, Morrissey alleges that Rockbranch negligently violated the contract by failing to complete the project in a timely manner and exposing the steel to winter conditions, which caused the steel to rust. Plaintiff issued a preferred business policy to Rockbranch, which was in place at all relevant times during the project. In an attempt to resolve issues regarding Plaintiff's obligations in the underlying action, Plaintiff is now seeking a judgment declaring that Plaintiff has no duty to defend or indemnify Rockbranch under the policy. This matter is now before the Court on Defendant Morrissey and Plaintiff's cross motions for summary judgment. (Docs. 17 and 18.)

## II. Background

The facts in this case are undisputed. In November 2003, Morrissey entered into a subcontract with Rockbranch, which provided that Rockbranch would provide all structural steel and other specified steel work for the Project. In the underlying action, Morrissey alleges that Rockbranch failed to complete its performance in a workmanlike manner and, therefore, that Rockbranch failed to fulfill its contractual obligations. Specifically, Morrissey alleges that when Rockbranch's welders failed to qualify, Rockbranch abandoned the project in late October 2004. Rockbranch does not dispute these facts.

## III. Motion for Summary Judgment

### A. Legal Standard

Summary judgment is proper where the pleadings and affidavits, if any,

2

"show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **FED. R. CIV. P. 56(c);** *Oats v. Discovery Zone*, **116 F.3d 1161, 1165 (7th Cir. 1997)** (citing *Celotex Corp. v. Catrett*, **477 U.S. 317, 322 (1986)**). The movant bears the burden of establishing the absence of fact issues and entitlement to judgment as a matter of law. *Santaella v. Metro. Life Ins. Co.*, **123 F.3d 456, 461 (7th Cir. 1997)** (citing *Celotex*, **477 U.S. at 323**). In reviewing a summary judgment motion, the Court does not determine the truth of asserted matters, but rather decides whether there is a genuine factual issue for trial. *Celex Group, Inc. v. Executive Gallery, Inc.*, **877 F. Supp. 1114, 1124 (N.D. Ill. 1995) (Castillo, J.)**. The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the nonmovant. *Regensburger v. China Adoption Consultants, Ltd.*, **138 F.3d 1201, 1205 (7th Cir. 1998)** (citing *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 255 (1986)**).

In response to a motion for summary judgment, the nonmovant may not simply rest on the allegations in his pleadings. Rather, she must show through specific evidence that an issue of fact remains on matters for which she bears the burden of proof at trial. *Walker v. Shansky*, **28 F.3d 666, 670-71 (7th Cir. 1994),** *aff'd*, **51 F.3d 276** (citing *Celotex*, **477 U.S. at 324**). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, **477 U.S. at**

3

**249-50** (citations omitted); *accord* ***Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996)**; ***Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994)**. "[Nonmovant's] own uncorroborated testimony is insufficient to defeat a motion for summary judgment." ***Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 939 (7th Cir. 1997)**. Further, the non-moving party's own subjective belief does not create a genuine issue of material fact. ***Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 401 (7th Cir. 1997)**.

### B. Analysis

With no material facts in dispute, the issue before the Court is purely a question of law, which the Court may properly decide at the summary judgment stage. The question before the Court is whether the insurance policy purchased by Rockbranch from Plaintiff covers Rockbranch's decision to abandon the project at Mid America Airport and thereby requires Plaintiff to defend Rockbranch in the underlying state action. The Court agrees with Plaintiff that all of the claims in the underlying suit relate to Rockbranch's failure to fulfill its contractual obligations and that such claims are not covered by Plaintiff's commercial general liability policy.

During the time in question, Rockbranch had a Commercial General Liability ("CGL") policy with Plaintiff. Under "Section I-Coverages," the policy states: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those

4

damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." (Doc. 2, Ex. 1, part B, p. 1.) Relevant to the issues at hand, the policy goes on to state that the insurance applies only to "property damage" if the "'property damage' is caused by an 'occurrence' that takes place on the 'coverage territory.'" (*Id*.) In addition, "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions" and "property damage" is defined as "a.) [p]hysical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b.) Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it." (*Id*., p. 12-13.) Lastly, the policy excludes property damage to "5) that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations; or 6) That particular part of any property that must be restored, repaired, or replaced because 'your work' was incorrectly performed on it."

      Plaintiff argues that under Illinois law, a cause of action for breach of contract is not covered by a commercial general liability policy. Furthermore, Plaintiff asserts that the claims made against Rockbranch do not constitute an "occurrence" or "property damage" as defined by the policy. Hence, Plaintiff argues that Rockbranch is not entitled to coverage for the claims made against it and that

5

it has no duty to defend Rockbranch in the underlying action.

Defendant Morrissey argues in its motion for summary judgment (Doc. 17) that "the duty to defend an insured is quite broad, and applied whenever the allegations in a complaint state a cause of action that gives rise to the *possibility* of recovery under a policy." (*Id*. at p. 3.) Morrissey maintains that unless it is absolutely certain that a policy does not cover an insured's action in the litigated matter then an insurer has a duty to defend. In support of this proposition, Morrissey cites ***Centennial Ins. Co. v. Applied Health Care Systems, Inc.*, 710 F.2d 1288 (7th Cir. 1983)**, a case it argues is analogous to the present case. In ***Centennial***, the Seventh Circuit held that the insurer had a duty to defend a computer technology firm that had allegedly installed a faulty component into a health care provider's data processing system. In that case, the installation caused a number of problems, including the loss of billing and patient care information. Plaintiff asserts that a key distinction between ***Centennial*** and this case is that the Seventh Circuit in ***Centennial*** relied on California substantive law, rather than Illinois law. While that is true, this Court finds that California and Illinois employ nearly the same standard in determining whether an insurer has a duty to defend. However, this Court finds two other distinctions that are significant. First, unlike the multitude of cases cited by Plaintiff in support of its position that it has no duty to defend, this case does not involve construction work and, therefore, the facts in this case are not as analogous as Morrissey would like the Court to believe. But more importantly, the policy in

***Centennial*** contained a duty to defend clause that "would lend the insured reasonably to expect defense of *any* suite regardless of merit or cause. The basic promise would support the insured's reasonable expectation that he had bought the rendition of legal services to defend a suit for bodily injury which alleged he had caused it, negligently, nonintentionally, intentionally or in any other manner." ***Id.* at 1292 (*quoting Gray v. Zurich Insurance Co.*, 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168 (1966))**. The exclusion in that case, on its face, applied only to the insurer's duty to indemnify - not its duty to defend. The Court noted, "If the insurance company wants to protect itself in this type of a situation, it should be clearly stated that the exclusion clause applies to both the duty to pay and the duty to defend." ***Centennial,* 710 F.2d at 1292 (*quoting United States v. United States Fidelity & Guar. Co.*, 601 F.2d 1136 (10th Cir.1979))**. In this case, Plaintiff, the insurer, made it explicitly clear in the insuring agreement that the exclusion applied to the duty to defend:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. **However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply.**

(Doc. 1, Ex. 1, Part B. P. 1.) (emphasis added).

Although it is true that even the possibility of coverage under an insurance policy triggers the duty to defend under Illinois law, *see Keystone Consol. Indus., Inc. v. Employers Ins. Co. of Wausau*, **456 F.3d 758, 762 (7th Cir. 2006)**, Morrissey has failed to establish that there is even a remote possibility that its claims against Rockbranch should be covered by Plaintiff's CGL policy. In fact, quite honestly, Morrissey's reasoning fails to pass the laugh test. To suggest that a CGL policy should cover a party who intentionally abandons a project and breaches a contract is absurd. As Plaintiff suggests, Morrissey is attempting to convert Rockbranch's CGL policy into the likes of a performance bond.

First, as a general rule, commercial general liability insurance policies do not typically cover breach of contract claims under Illinois law. ***See Viking Const. Management, Inc. v. Liberty Mut. Ins. Co.*, 358 Ill. App. 3d 34, 831 N.E.2d 1 (2005) (Ill. App. 1 Dist. 2005).** In addition, the plain language of the policy does not support a finding that coverage should apply in this instance. The policy defines "occurrence" as an accident "including continuous or repeated exposure to substantially the same general harmful conditions." Morrissey attempts to convince the Court that Rockbranch's inability to secure qualified welders and consequently its abandonment of the project was an "occurrence" or an "accident" because it was totally unforeseeable. In fact, it was totally foreseeable that if Rockbranch walked away from the project that it would breach its contract with Morrissey. Likewise, the rust and other damages to the steel were not caused by an

8

"occurrence" or accident nor do they even qualify as "property damage" as defined by the terms of the CGL policy. An accident "does not include the 'natural and ordinary consequences of an act.'" *Id.* **at 47 (***quoting Monticello Insurance Co. v. Wil-Freds Construction***, 277 Ill. App. 3d 697, 703, 214 Ill.Dec. 597, 661 N.E.2d 451 (1996)).** No matter what logical acrobatics Morrissey performs, a horse is a horse is a horse even if you call it a dog.

## V. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant Morrissey's motion for summary judgment (Doc. 17) and **GRANTS** Plaintiff's motion for summary judgment (Doc. 18.) The Court finds that Plaintiff State Automobile Property and Casualty Insurance Company is entitled to summary judgment in its favor as to its Complaint for Declaratory Judgment. Clerk to enter judgment accordingly.

**IT IS SO ORDERED.**

Signed this 5th day of December, 2007.

/s/ David R Herndon
**Chief Judge**
**United States District Court**